**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. WILLIAM P. GRESS and AL AND PO CORPORATION, on behalf of plaintiffs and the class members defined herein, | ) ) ) | |
| | ) | 14 C 501 |
| Plaintiffs, | ) | ***Consolidated with*** |
| | ) | 14 C 2177 |
| v. | ) | |
| | ) | Magistrate Judge Gilbert |
| PREMIER HEALTHCARE EXCHANGE WEST, INC., doing business as PHX, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

*Counsel for Plaintiff
AL and PO Corporation
and the Settlement Class*

Daniel A. Edelman
Heather Kolbus
**EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

*Counsel for Plaintiff
Dr. William P. Gress
and the Settlement Class*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    PROCEDURAL HISTORY ....................................................................1

III.   CLASS COUNSEL'S FEE REQUEST ..................................................5

      A.  Class Counsel Performed Substantial Work on Behalf of the Class .................5

      B.  The Percentage of the Recovery Method is Preferred in Determining
          Attorneys' Fee Awards ........................................................................6

          1.   The Requested Fees Represent 33.33% of the Common Benefit Provided
               to the Class – Is Consistent With the Market and the Range Found
               Reasonable by the Courts .........................................................7

IV.   THE REQUESTED INCENTIVE AWARDS TO THE REPRESENTATIVE
      PLANTIFFS ARE PROPER ..................................................................9

V.    CONCLUSION......................................................................................10

## TABLE OF AUTHORITIES

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Anderson v. AB Painting & Sandblasting, Inc.*,
578 F.3d 542 (7th Cir. 2009) .................................................................................9

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .............................................................................9

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 650 (7th Cir. 1994) .................................................................................6

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .........................................................................6, 7

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...............................................................................7

*In the Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .........................................................................6, 8

*Johnston v. Comerica Mortg. Corp.*,
83 F. 3d 241 (8th Cir. 1996) ...............................................................................8

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ...............................................................................7

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) ...............................................................................7

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...............................................................................8

*Redman v. RadioShack Corp.*,
2014 WL 4654477 (7th Cir. Sept. 19, 2014) .....................................................8

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ...............................................................................7

**UNITED STATES DISTRICT COURT CASES**

*Able Home Health, LLC et al. v. Globe Med.-Surgical Supply Co.*,
12-cv-5608 (N.D. Ill.) .......................................................................................10

*Affiliated Health Care Associates, P.C. v. Handit2 Network, LLC*,
13-cv-5782 (N.D. Ill.) ................................................................................................10

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ...................................................................7

*C.E. Design v. King Supply Co., LLC*,
09-cv-2057 (N.D. Ill.) ...................................................................................................9

*Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals, Inc*.,
09-cv-4100 (N.D. Ill.) ...................................................................................................9

*Gress v. SecurityMetrics, Inc.*,
13-cv-936 (N.D. Ill.) .....................................................................................................9

*In re Bayou Sorrel Class Action*,
2006 WL 3230771 (W.D. La. Oct. 31, 2006) ...............................................................6

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005).....................................................................................9

*In re Southwest Airlines Drink Voucher Litigation*,
1:11-cv-08176 (Docket No. 141) ..................................................................................9

*Meyenburg v. Exxon Mobil Corp.*,
2006 WL 2191422 (S.D. Ill. July 31, 2006) ................................................................8

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...............................................................7

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ..............................................................................9

*Summers v. UAL Corp. ESOP Comm.*,
2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ...............................................................7

*Trustees of the Michiana Area Electrical Works Health & Welfare Fund v. TGB Unlimited, Inc.*,
2015 WL 1865561 (N.D. Ind. Apr. 22, 2015) ..............................................................9

*Vista Healthplan, Inc. v. Warner Holdings Co. III,*
246 F.R.D. 349 (D.D.C. 2007)......................................................................................8

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...............................................................7

**MISCELLANEOUS**

Posner, *Economic Analysis of Law*
§ 21.9 (3d ed. 1986) .......................................................................................................................7

Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*,
69 (Fed. Jud. Ctr. 1996) ...............................................................................................................8

Pursuant to Fed. R. Civ. P. 23 and the Preliminary Approval Order (Docket No. 80), Plaintiffs Dr. William P. Gress ("Dr. Gress") and AL And PO Corporation ("AL And PO") (collectively, the "Plaintiffs"), by their counsel, respectfully submit the following Motion for Attorneys' Fees, Costs, and Incentive Award.

## I.    INTRODUCTION

The Settlement Fund achieved through Class Counsel's efforts is $756,075. Class Counsel seeks the Court's approval of an award for attorneys' fees and costs in the amount of 1/3 of the Net Settlement Fund,[1] plus incentive awards of $8,000 to Dr. Gress and $4,000 to AL And PO. The award sought is reasonable and appropriate, as Class Counsel litigated this matter without any compensation from the investigation stages all the way through class-wide resolution on behalf of the Class, and obtained a settlement that provides substantial relief to the Class members. Fee awards in the amount of 1/3 (or 33.33%) of a settlement fund is also within the Seventh Circuit's presumptive standards, where awards are often as high as 40% of the fund.

## II.    PROCEDURAL HISTORY

Plaintiff Gress filed his original complaint against PHX Inc. on January 23, 2014.  That case was captioned *Dr. William P. Gress v. Premier Healthcare Exchange Corporation, doing business as PHX, and John Does 1-10*, assigned case number 14-cv-501 and to The Honorable Judge Der-Yeghiayan. (*See* 14-cv-501, at Docket No. 1.)

Plaintiff AL And PO filed its original complaint on March 27, 2014. The case was captioned *AL and PO Corporation v. Premier Healthcare Exchange, Inc.*, assigned case number 14-cv-2177 and to The Honorable Judge Kendall. (*See* Case No. 14-cv-2177, Docket No. 1.)

---

[1] Because the value of the Net Settlement Fund depends on the final cost of settlement administration and notice and because those costs have not been finalized, Plaintiffs' Counsel cannot provide a precise value of their proposed fee award. Nevertheless, assuming settlement administration and notice costs fall between $45,000 and $50,000 – the cap set forth in the Agreement – Plaintiffs' Counsel estimate their fee award to be between $235,358.33 and $237,025.

On April 16, 2014, Judge Der-Yeghiayan consolidated Plaintiffs' respective actions for all purposes. (*See* 14-cv-501, Docket No. 30.)

On May 14, 2014, Plaintiffs filed their consolidated amended complaint against PHX West and several unknown defendants.[2] Plaintiffs' allegations did not include violations of various common law claims. (*Id.*, Docket No. 31.)

That same day, Plaintiffs also filed a motion for class certification and a motion for appointment of interim co-lead counsel. (*Id.*, Docket Nos. 32, 35.)

At the hearing on May 28, 2014, Judge Der-Yeghiayan granted leave for Plaintiffs to file a second amended complaint and corresponding motion for class certification. (*Id.*, Docket No. 38.) Accordingly, Plaintiffs' pending motion for class certification was stricken as moot. (*Id.*) In addition, Judge Der-Yeghiayan granted Plaintiffs' motion for appointment of interim co-lead counsel. (*Id.*)

On May 29, 2014, Plaintiffs filed their second consolidated amended complaint against PHX West. (Docket No. 39.) The case is currently pending before this Court. Plaintiffs' Third Consolidated Amended Complaint ("Complaint") alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/5 *et seq.*, and the common law (conversion, private nuisance, trespass to chattels) based on PHX West's sending or causing to send unsolicited advertisement facsimiles with deficient opt-out notices to the facsimile machines of Plaintiffs and others similarly situated. (*Id.*)

---

[2] Plaintiffs originally named PHX West's parent company, Premier Healthcare Exchange, Inc. as a defendant. However, after the Parties informally exchanged information, Plaintiffs concluded that PHX West was the correct defendant.

On June 12, 2014, the Parties jointly consented to proceed before Magistrate Judge Gilbert, and Plaintiffs dismissed the unknown Doe defendants. (Docket Nos. 43, 44.) During the July 17, 2014 status hearing, Judge Gilbert scheduled a settlement conference for September 19, 2014. (Docket No. 47.) The Court also set a discovery schedule in accordance with the proposed dates in the Parties' previously submitted status report. (*Id.*)

On July 23, 2014, the Parties filed a stipulation regarding the Plaintiffs' pending motion for class certification whereby they agreed that the motion may be dismissed without the Plaintiffs' claims being subjected to an involuntary resolution via a formal or informal offer of judgment. (Docket No. 51.)

On August 26, 2014, the Parties reported that additional discovery was necessary for a productive settlement conference. (Docket No. 54.) Accordingly, the Court struck the settlement conference set for September 29, 2014. (*Id.*)

On September 2, 2014, Plaintiffs issued a subpoena to Scrypt, Inc., the third party broadcaster of PHX West's faxes. (*See* Docket No. 73-3 ¶15.) Pursuant to a confidentiality order entered on September 18, 2014, the Parties and Scrypt, Inc. informally exchanged information between September and November for the purpose of exploring a resolution of the cases. (*See* Docket No. 53; Docket No. 73-3 ¶16.)

In October, 2014, the Parties held an informal settlement conference at Sheppard Mullin Richter & Hampton LLP, 70 West Madison Street, 48th Floor, Chicago, IL 60602. (*See* Docket No. 73-3 ¶17.) Over the course of several hours, the Parties exchanged positions on the merits of their claims and defenses and the framework of a potential settlement. (*Id.*)

At the November 3, 2014 status hearing, the Parties informed Judge Gilbert that they held a settlement conference amongst themselves, and requested the Court's assistance in resolving

the case. (Docket No. 62.) The Court directed the Parties to exchange written statements in accordance with the Court's standing orders. The Court set a settlement conference for November 24, 2014. (*Id.*)

The Parties exchanged their settlement position statements. (*See* Docket No. 73-3 ¶19.)

On November 24, 2014, the Parties engaged in an extensive, several hours-long settlement conference. With the assistance of the Court, the Parties reached an agreement in principle subject to a few contingencies. The contingencies were clarified on the record on December 3, 2014, and thus, after nearly four months of settlement discussions, the Parties reached an agreement. (*See generally id.* ¶20.)

After reaching agreement on the material terms of the class-wide settlement structure, the Parties then spent additional time exchanging drafts of a final, written settlement agreement. After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement that has now been fully executed and attached hereto. (*Id.* ¶21.)

On January 6, 2015, the Parties entered into a stipulation for the filing of Plaintiffs' operative Complaint. (Docket No. 69.) Plaintiffs filed the Complaint on January 8, 2015 after the Court granted the Parties' stipulation. (Docket Nos. 70-71.)

On January 12, 2015, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. (Docket No. 73.) At the preliminary approval hearing, the Court requested additional information regarding the Settlement and directed Plaintiffs to file a supplemental brief. (Docket No. 77.) On February 23, 2015, Plaintiffs filed their Supplemental Brief In Support of the Motion for Preliminary Approval of Class Action Settlement. (Docket

No. 78.) The Court found that the Supplemental Brief was satisfactory (Docket No. 79) and entered an Order granting preliminary approval on March 4, 2015. (Docket No. 80.)

## III.     CLASS COUNSEL'S FEE REQUEST

### A.  Class Counsel Performed Substantial Work on Behalf of the Class.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of Class members. PHX West's attorneys mounted a skilled defense, from the pleadings stage through settlement. The hours Class Counsel expended in battling PHX West, include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2014, starting with an analysis of the facsimile advertisement issued on PHX West's behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA and state law claims; (2) drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with clients regarding the complaint and the case in general.

- **Litigation**. Early on in the case, PHX West contended that the fax was not an advertisement and that class certification would be difficult given the issue of consent. PHX West provided information on the method by which faxes were sent and identified the third party who sent the junk faxes. In addition, PHX West contended that many, if not all, of the recipients had provided express permission for PHX West to send the faxes because they were members of healthcare provider networks managed by PHX West or otherwise voluntarily provided their fax numbers to PHX West. Thus, in PHX West's view, individualized issues predominated over common Class issues. PHX West raised these arguments informally through correspondence. PHX West contended that Scrypt, Inc. possessed the records to identify to whom the junk faxes were sent.  Class Counsel issued a subpoena to an out-of-state, third party entity, Scyrpt, Inc., to obtain this information which ultimately led to identification of the Settlement Class Members.   Class Counsel also significantly researched class certification issues (and potential PHX West's defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature. For example, Class

Counsel researched the theory under which a class could be certified, even if PHX West had obtained prior express permission or had an existing business relationship with some or all of the Settlement Class members.

- **Interactions With Clients and the Members of the Class**. During the course of the past nine months, Class Counsel has received various inquiries from Settlement Class Members, which required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with PHX West that spanned approximately four months. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through informal discovery, and regularly engaged in telephonic conferences and email exchanges. After approximately four months of negotiations, the parties were able to agree on the substantive terms that would provide immediate and direct benefits to the Class.

**B. The Percentage of the Recovery Method is Preferred in Determining Attorneys' Fee Awards.**

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating class counsels' attorneys' fees. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 650, 566 (7th Cir. 1994); *In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . ." *In re Bayou Sorrel Class Action*, 6:04-cv-1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases).

As demonstrated directly below, under the percentage of recovery method, the fee request here is entirely supported under presumptive benchmarks used in the Seventh Circuit.

-6-

1. **The Requested Fees Represent 33.33% of the Common Benefit Provided to the Class – Is Consistent With the Market and the Range Found Reasonable by the Courts.**

In deciding the appropriate fee under the percentage-of-recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[T]he measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case.").

The fee agreements between Class Counsel and Plaintiffs are contingent in nature. (*See* Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto, ¶3; and Declaration of Daniel A. Edelman, attached hereto, ¶40.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class

action"); *Will v. Gen. Dynamics Corp.*, 06-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 03-cv-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit") (citing *In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that in consumer class actions, attorneys' fees should not exceed 50% "of the total amount of money going to class members and their counsel"). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).

Here, Plaintiffs are requesting – and PHX West has agreed to pay – 1/3 of the Net Settlement Fund in attorneys' fees (approximately $237,025). As explained above, the Net Settlement Fund is approximately $699,075, which may be increased if the actual costs of notice and administration fall below the $50,000 cap in the Agreement. Thus, the requested attorneys' fees amount is 33.33% of the total potential benefit obtained for the class.[3]

---

[3] This number was calculated based on the total approximate value of the Net Settlement Fund and the attorneys' fees. The inclusion of fees in calculating the total monetary value of class relief is

## IV.   THE REQUESTED INCENTIVE AWARDS TO THE REPRESENTATIVE PLAINTIFFS ARE PROPER.

Finally, Plaintiffs request that Dr. Gress receive $8,000 and AL And PO receive $4,000 as incentive awards. PHX West does not oppose these amounts (and which, like attorneys' fees, were the result of a negotiated compromise). The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action law suit. *Id.*

Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *See, e.g.*, *In re Southwest Airlines Drink Voucher Litigation*, No. 1:11-cv-08176 (Docket No. 141) (each of two class representatives received $15,000 incentive awards); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million). Similar incentive awards have been ordered in other TCPA cases. *Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals, Inc.*, 09-cv-4100 (N.D. Ill.) (Docket No. 242) ($10,000 incentive award to plaintiff); *C.E. Design v. King Supply Co., LLC*, 09-cv-2057 (N.D. Ill.) (Docket No. 178)

---

appropriate. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (stating that the value of relief for the Class is "the fee plus what the class members received."); *Johnston v. Comerica Mortg. Corp.,* 83 F. 3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Vista Healthplan, Inc. v. Warner Holdings Co. III,* 246 F.R.D. 349, 363 (D.D.C. 2007) ("because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement"). The Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages. . . Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy". *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009); *see Trustees of the Michiana Area Electrical Works Health & Welfare Fund v. TGB Unlimited, Inc.*, 2:13-CV-199-JEM, 2015 WL 1865561 (N.D. Ind. April 22, 2015) (same).

($10,000 incentive award to plaintiffs); *Gress v. SecurityMetrics, Inc.*, 13-cv-936 (N.D. Ill.) (Docket No. 67) ($8,000 incentive award to plaintiff); *Affiliated Health Care Associates, P.C. v. Handit2 Network, LLC*, 13-cv-5782 (N.D. Ill.) (Docket No. 110) ($10,000 incentive award to plaintiff); *Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.*, 12-cv-5608 (N.D. Ill.) (Docket No. 90) ($5,000 and $10,000 incentive awards to named plaintiffs).

In this case, the class representative Plaintiffs have contributed substantially to this litigation and have invested considerable time, at their own expense, to do so. Plaintiffs aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiffs also spent several hours with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Decl., ¶4.) Furthermore, Dr. Gress participated in the mediation before Judge Gilbert. (*Id.* ¶8.)

## V. CONCLUSION

For the reasons set forth above, Class Counsel respectfully suggests that the proposed (and agreed-upon) award of attorneys' fees and costs in the amount of 1/3 of the Net Settlement Fund (approximately $237,025) – and the class representative awards of $12,000 – are fair, appropriate, and reasonable, and requests the Court enter an Order approving these amounts.

Dated: May 11, 2015                    Respectfully submitted,

                                       *s/ Joseph J. Siprut*
                                       _____

                                       Joseph J. Siprut
                                       *jsiprut@siprut.com*
                                       Gregg M. Barbakoff
                                       *gbarbakoff@siprut.com*
                                       Ismael T. Salam
                                       *isalam@siprut.com*
                                       **SIPRUT PC**
                                       17 North State St.
                                       Suite 1600
                                       Chicago, Illinois 60602
                                       312.236.0000
                                       Fax: 312.241.1260

                                       s/ Daniel A. Edelman
                                       _____

                                       Daniel A. Edelman
                                       Heather Kolbus
                                       Edelman, Combs, Latturner
                                       & Goodwin, LLC
                                       20 S. Clark Street, Suite 1500
                                       Chicago, IL 60603
                                       (312) 739-4200
                                       (312) 419-0379 (FAX)

                                       ***Counsel for Plaintiffs and
                                       the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards** was filed this 11th day of May, 2015, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

*s/ Joseph J. Siprut*

4839-3896-2979, v. 2